UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **UNITED STATES ex rel.** | ) | |
| | ) | |
| **MATTHEW A. PEQUIGNOT,** | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | Case No. 2:08-cv-0222-TJW |
| | ) | |
| **THE GILLETTE COMPANY and** | ) | |
| **THE PROCTER & GAMBLE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

*QUI TAM* **RELATOR MATTHEW PEQUIGNOT'S SURREPLY TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT UNDER RULE 12(b)(6)
FOR FAILURE TO PLEAD WITH PARTICULARITY UNDER RULE 9(b)**

By their motion to dismiss, Defendants seek to impose a stringent level of pleading, not required by the Federal Rules of Civil Procedure, that would all but ensure that Section 292 false marking claims, such as those brought by Mr. Pequignot, can never survive the initial pleading stage.  Notwithstanding Defendants' misplaced reliance on the sole case to hold to the contrary, Rule 9(b)'s requirements for heightened pleading do not apply to Section 292 claims.   In any event, the Amended Complaint more than adequately pleads the factual basis for Mr. Pequignot's claims that Defendants (1) falsely marked unpatented articles, and (2) acted with the requisite intent, particularly given that "intent" may be alleged generally under either Rule 8 or 9(b).  Mr. Pequignot has no need of discovery in order to plead a "valid" claim, as Defendants suggest.  Rather, it is Defendants who are trying to convert the initial "gatekeeper" pleading standards into an impenetrable fortress in order to prevent Mr. Pequignot from moving forward and proving Defendants' extensive false marking practices in violation of 35 U.S.C. § 292.  This Court should not reward Defendants' tactics and should deny their motion.

I.  **RULE 9(B)'S HEIGHTENED PLEADING STANDARD DOES NOT APPLY TO RELATOR'S FALSE PATENT MARKING CLAIMS**

As Mr. Pequignot demonstrated in his opening brief, the overwhelming weight of the case law, the language of Rule 9(b), and the substantial public policy interests all compel the conclusion that Rule 9(b)'s heightened pleading standards for "fraud" claims do not apply to Mr. Pequignot's false marking claims.  In their reply, Defendants rely on a recent decision, *Juniper Networks v. Shipley*, No. C 09-0696, 2009 WL 1381873, at *4 (N.D. Cal. 2009), in which a court for the first time held that Rule 9(b) applies to Section 292 claims.  This Court should not accept Defendants' invitation to follow this erroneous solitary decision, which ignores case law to the contrary and mistakenly confuses Section 292 claims with "fraud" claims for purposes of applying Rule 9(b).

In *Juniper,* the Court concluded that Section 292 claims were subject to Rule 9(b) solely because such claims require an "intent to deceive," an argument that was expressly rejected in both *Astec Am., Inc. v. Power-One, Inc.*, 2008 U.S. Dist. Lexis 30365, at *33 (E.D. Tex. April 11, 2008), and *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp.2d 1314, 1327 (M.D. Fla. 2007).[1]  In reaching its conclusion, the Court failed to consider that Section 292 claims, although requiring a false marking and a deceptive intent, do not have all the elements of common-law fraud, and therefore do not fall within the narrow scope of Rule 9(b).  *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 668 (5th Cir. 2004) (Court of Appeals holding Rule 9(b)'s "scope of application must be read narrowly," and reversing trial court's dismissal of complaint under Rule 9(b)).  Unlike common-law fraud claims, Section 292 claims, pursuant to Congress' design, do not require that the plaintiff prove reliance on Defendants' false markings.  Nor do they require that the plaintiff prove actual damages or injury as a result of Defendants' deceptive practices.  *Clontech Labs Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (discussing elements of claim).

Under similar statutory schemes, courts have held that claims that require deceptive intent but otherwise do not require proof of any other elements of common-law fraud do not fall within the scope of Rule 9(b).  *See Prophet v. Myers*, No. H-08-0492, 2008 WL 2328349, at *2-3 (S.D. Tex. 2008) (holding that Rule 9(b) did not apply to Plaintiff's Fair Debt Collections Practices Act claims because, although based on false representations and deceptive means, no proof of reliance or actual damages was required and therefore claims did not "sound[] in fraud"); *Neild v. Woldpoff & Abramson, LLP*, 453 F.Supp.2d 918, 923-24 (E.D. Va. 2006)

---

[1] Numerous other courts have applied Rule 8 to Section 292 claims without discussion.  *See, e.g., Vantage Trailers, Inc. v. Beall Corporation*, No. H-08-0361, 2008 WL 4746288, at *1-2 (S.D. Tex. 2008) (applying Rule 8 pleading standards to § 292 claim); *Griner v. Mercurio*, No. CV 05-6583, 2005 WL 6133906, at *7-8 (C.D. Cal. 2005) (same).

(same).  Because Section 292 does not require proof of reliance or actual damages,  Rule 9(b)'s heightened pleading requirements do not apply.

Defendants' continued reliance on *Pedroli ex. rel. Microtune, Inc.  v. Bartek*, 564 F. Supp.2d 683, 687 (E.D. Tex. 2008), for the proposition that Rule 9(b) should be read broadly to apply here because Section 292 claims purportedly "sound in fraud" is similarly misplaced.  That case involved violations of the Securities Exchange Act under 15 U.S.C. §§  78n & 78j, which contain all the elements of common-law fraud.  Moreover, Defendants' citation to cases that refer in passing to Section 292's "fraudulent intent" have nothing to do with Rule 9(b)'s pleading requirements, and lend no weight to Defendants' efforts to strain the scope of Rule 9(b).  *See* Relator's Opp. at 6-7.

Finally, Defendants do not rebut the fact that the justification that underlies Rule 9(b)'s heightened pleading – that is, that the plaintiff was the direct victim of the fraudulent misrepresentations and thus can plead them with a high degree of particularity – simply does not exist under Section 292 by Congress' own design.  *See, e.g., Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1495 (N.D. Ill. 1987) (noting that justification of Rule 9(b) heightened pleading does not apply where plaintiff is not direct recipient of fraudulent misrepresentations, and therefore declining to apply Rule 9(b) to third-party disparagement claim under state Deceptive Trade Practices Act).  The level of detail Defendants continue to demand, which they do not dispute is exclusively within their own knowledge and control, would ensure that no *qui tam* relator could successfully file a Section 292 claim without having inside working knowledge of the company's false marking practices.  That is not what Section 292 requires.

Rule 8's pleading requirements, which Defendants do not dispute have been satisfied, more than adequately put Defendants on notice of the nature of the claims against them.

## II. EVEN IF THE COURT EXTENDED RULE 9(B)'S REQUIREMENTS, THE AMENDED COMPLAINT PLEADS FALSE MARKING WITH SUFFICIENT PARTICULARITY

### A. Mr. Pequignot's Claims that Defendants Have Falsely Marked Products with Expired Patents Are Sufficiently Detailed.

Defendants do not dispute that Mr. Pequignot has adequately alleged the "who, what, where, and how" of his claims that Defendants falsely marked their products with expired patents. Defendants' sole argument is that Mr. Pequignot has failed to specify the "when" – that is, when the false markings occurred – but Defendants are wrong. In his Complaint, Mr. Pequignot expressly alleges, as to each product and patent, that Defendants falsely marked the product with the expired patent number <u>after</u> the patent expired. *See, e.g.,* Am. Compl. ¶¶ 328, 346, 359, 365, 371, 444, 459. Recognizing that these factual allegations are more than sufficient, Defendants attempt to mischaracterize Mr. Pequignot's Complaint, asserting that he did not allege that any products were marked after expiration, but rather generally alleged that it "might" have first happened after expiration. The Complaint clearly alleges otherwise. *Id.*

To the extent that Defendants are really arguing that Mr. Pequignot must allege the exact dates of Defendants' false marking of each and everyone of their products, that argument must be rejected. Neither Rule 9(b) nor Rule 8 imposes such an impossible burden, particularly where the allegations involve the mass production of millions of products, and the <u>specific</u> date that each individual article was marked simply has no relevance (unlike, for example, a fraudulent misrepresentation case involving conversations on different days). Nor is such specificity possible when the information is exclusively under Defendants' control as it is here. *See, e.g.*, *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1029 (N.D. Miss. 1993) (noting that Rule 9(b)'s

- 4 -

particularity requirements must be read in harmony with Rule 8 notice pleading, and holding that "relaxation of Rule 9(b)'s particularity requirements is appropriate in instances where such information is in defendant's hands or control").

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997), upon which Defendants heavily rely, also recognized that the pleading requirements of Rule 9(b) must be relaxed when the facts relating to the fraud are peculiarly "within the perpetrator's knowledge." In that case, the Plaintiff alleged that the Defendants submitted claims for medically unnecessary services based solely on a reference to "statistical studies," and made no further allegations in support of his claim. The Court held that, in order to satisfy Rule 9(b), Plaintiff must identify specific referring physicians or specific claims submitted. Here, Mr. Pequignot has more than met that standard – identifying the specific products, the relevant patent numbers,[2] dates of expiration, and alleging that the products were falsely marked after the date of expiration.

> **B.    Mr. Pequignot's Claims that Defendants Have Falsely Marked Products with Patents Not Covering the Scopes Do Not Rely Solely on Patent Titles.**

Defendants glibly assert that Mr. Pequignot is attempting to "shift the burden" of pleading his claims that Defendants have falsely marked certain products with scopes not covering the product, but the allegations in the Complaint prove otherwise. Mr. Pequignot has expressly alleged the factual basis for his causes of action – identifying the patent at issue for each product, and as to each patent alleging that none of the claims contained in that patent cover the product. *See, e.g.,* Am. Compl. ¶¶ 212-306. Thus, Defendants' conclusory assertion that Mr. Pequignot is solely relying on "patent titles" as the basis for his scope allegations rings

---

[2] It should be noted that Defendants' products are marked with multiple patents, and the Amended Complaint specifies exactly which of the patents, for each product, constitutes a false marking.

hollow.  What Defendants in essence are arguing is that Mr. Pequignot must recite the entire contents of their own patents, *verbatim*, in the Complaint in order to satisfy Rule 9(b)'s requirements.  Not only does 9(b) not impose such a senseless requirement, but it is well-recognized in patent litigation that the contents of patents are already incorporated by reference into the complaint.  *See, e.g.*, *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp.2d 633, 636-37 (S.D.N.Y. 2001) (noting that patents referenced in trade dress infringement case were incorporated by reference for purposes of ruling on a motion to dismiss pursuant to Rule 12(b)(6)).

Recognizing that Mr. Pequignot has provided a more than adequate factual basis for his scope counts, Defendants argue for the first time that they may mark their "unpatented" products with a patent that does read onto the product.  Defendants rely on a distorted reading of *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed. Cir. 1994) for this argument.  In that case, the patent owner, Amsted, sold one piece (a center plate) of its patented invention, a railroad car underframe structure, to customers with express instructions on how to assemble the plate with the other components to form the patented invention.  The Court held that the defendant, a competitor, copied the center plate in willful direct infringement of Amsted's patent, but limited Amsted's damages to the period after it gave notice of the infringement because Amsted did not instruct its customers to mark the fully assembled invention with the patent number or mark the center plate as "for use" under the patent number.  Nowhere in the decision did the Court hold, as Defendants suggest, that a patent owner may mark an unpatented product with a patent number even where the patent has <u>no</u> application whatsoever to the product, and not be in violation of § 292.  Nor are the falsely marked products at issue here elements of a patented system to be assembled by a third-party, as was the unique scenario in *Amsted*.

Defendants do not contest that the products at issue in this case are not covered by at least one claim of each patent with which the products have been marked, nor are any of the products marked with any language to suggest anything other than the fact that the patent applies to and covers that particular product.  Under *Clontech*, Defendants' products were "unpatented," and Mr. Pequignot has alleged sufficient facts to establish that Defendants falsely marked those products in violation of Section 292.  *See U.S. Gypsum Co. v. Pacific Award Metals, Inc.*, 438 F.Supp.2d 1101, 1107 (N.D. Cal. 2006) (holding that article was "unpatented" for purposes of Section 292 where product did not fall within "literal claims" of the patent); *D.P. Wagner. Mfg. v. Pro Patch Systems, Inc.*, 434 F. Supp.2d 445, 452-53 (S.D. Tex. 2006) (holding that Defendant falsely marked products that did not fall within scope of patents, for example, none of Defendant's products were "a three-layered" patch within the meaning of the marked patent).

      **C.**     **Products Marked with Method Patents Are Unpatented Articles.**

Defendants' challenge to Mr. Pequignot's "method" patent counts is not directed at the adequacy of Mr. Pequignot's factual allegations but rather is based on a misunderstanding of basic patent law principles.  Mixing apples and oranges, Defendants continue to assert that their purely "method" patents, which do not contain any product-by-process claims and do not otherwise contain any claims covering the structure or configuration of an apparatus, nevertheless cover the products at issue and therefore such products are not falsely marked. Defendants' arguments are simply incorrect.

As *Clontech* clearly instructs, the first step in a false marking analysis is to determine whether the article is "unpatented," that is, to interpret the claims of the patent in question and then determine whether any claim "reads on" the article in question.  *Clontech*, 406 F.3d at 1352; *see also U.S. Gypsum,* 438 F. Supp.2d at 1105.  To make that determination, the Court must construe the scope of the patent claim at issue, and then compare that scope to the marked

product to determine if any claim applies to, or covers, the product. *Clontech,* 406 F.3d at 1352. Defendants conceded that their "method" patents do not contain any claims covering the structure or configuration of the product at issue. Nor do the patents even contain product-by-process claims, that is, claims in which the product is defined at least in terms of the method or process by which it is made. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 158 (1989) (defining product by process claims). Thus, by definition, such patents can only cover a sequence of events, not the product manufactured as a result of that sequence, and do not, as a matter of law, "read on" that product. *See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) (noting that marking statute does not apply to method claims because "when patent claims are directly only to a method, there is nothing to mark").

Defendants' continued reliance on the notice provisions of 35 U.S.C. § 287, and in particular, § 287(b)(4)(C), for the purported authority to falsely mark their products with method-only claims is misplaced. Defendants make no effort to distinguish *Crown Packaging*, which clearly holds that the notice provisions of § 287(a) do not apply to "method" patents, and only require marking when the patent contains both apparatus and method claims. Defendants' recitation of Section 287(b)(4)(C) concerning the marking of "process" claims refers back to Section 287(a), and does not change this analysis. That is, under § 287(b)(4)(C), where a patent owner has marked its product with a patent number containing both apparatus and method claims, it need not respond to a request for disclosure of process patents under § 287(b)(4) in order to be protected by the notice provisions of § 287. Contrary to Defendants' characterization, this does not give them license to mark their products with purely method-claim

patents without potentially running afoul of Section 292, if such markings are done with the requisite intent to deceive.

Nor does Mr. Pequignot concede, as Defendants suggest, that competitors may directly infringe method claims by copying an apparatus. To the contrary, only if the patented (i.e. specifically claimed) process or method steps are used can a method patent be infringed, regardless of whether the resulting product is a replica or not. *See Joy Techs. Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding sale of apparatus was not a direct infringement because a method or process claim is directly infringed only when the process is performed). *Hoover Group v. Custom Metalcraft Inc.*, 66 F.3d 299, 304-05 (Fed. Cir. 1995), lends no weight to Defendants' argument because it involved hybrid patents that included both product and method claims (for storage tanks), which is undisputedly not the case here. Moreover, the Federal Circuit in that case noted that the method claims could only be infringed if the tanks were manufactured utilizing the specific methods patented, not simply by copying the structure of the tanks, and remanded to the trial court for further findings in that regard. Defendants' reliance on *Abbott Labs v. Sandoz, Inc.*, 566 F.3d 1282, 1293-94 (Fed. Cir. 2009), is equally misplaced because that case involved "product by process" claims which, again, are not present here.

Despite Defendants' efforts to confuse the distinctions among method claims, product claims, and product by process claims, they cannot change the fundamental, well-established principle of law that pure method claims, such as those at issue here, can never "read on" the structure of an apparatus or product, and thus Defendants' marking of 42 products with method-only patents constitutes a false marking under Section 292.

   **D.**  **The Amended Complaint Adequately Alleges Deceptive Intent.**

Finally, Mr. Pequignot demonstrated in his opposition brief that the allegations contained in the Complaint, and his limited reliance on "information and belief" allegations, were more

- 9 -

than adequate under either Rule 8 or Rule 9(b)'s standards to plead Defendants' intent to deceive. Under either standard, intent may be plead generally. Fed. R. Civ. P. 9(b). In their reply, Defendants rely exclusively on *Juniper Networks* to challenge the sufficiency of these allegations, but notably fail to discuss the factual circumstances of *Juniper* which differ significantly from Defendants' alleged false marking conduct here. 2009 WL 1381873, at *4. In *Juniper*, the Plaintiff, an adversary of the Defendant's in unrelated patent litigation, alleged that the Defendant was falsely marking its website by suggesting that certain patented technologies at issue were functioning on the Website, when in fact they were not. In that case, Defendant's allegations that the Plaintiff intended to deceive the public were not based on any underlying factual circumstances but rather were mere conclusory allegations.

Here, by contrast, Mr. Pequignot has alleged sufficient facts to give rise to an inference that Defendants did not have a reasonable belief that their products were properly marked – including that the Defendants knew the patents had expired or otherwise did not have a scope that covered the product, that such products were marked <u>after</u> the date of expiration, and that as sophisticated patent holders, Defendants were well-aware of the content of their patents, including scope and length of protection, and marked such products in order to perpetuate their patent monopoly and obtain an unfair competitive advantage. These allegations are more than adequate under either Rule 9(b) or Rule 8, and defeat Defendants' motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in his opposition brief, Mr. Pequignot respectfully requests that this Court deny Defendants' motion to dismiss the Amended Complaint. To the extent the Court grants Defendants' motion to dismiss in whole or in part, Mr. Pequignot respectfully requests that he be granted leave to amend.

Dated: July 9, 2009     Respectfully submitted,

/s/ Carl S. Kravitz (by permission Wesley Hill)
Carl S. Kravitz
Ellen D. Marcus
Lisa J. Stevenson
Caroline E. Reynolds
Jane M. Ricci
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 778-1800 (telephone)
(202) 822-8106 (facsimile)
*Lead Counsel for Qui Tam Relator Matthew A. Pequignot, admitted pro hac vice*

Otis W. Carroll
Wesley Hill
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, TX 75703
(903) 561-1600 (telephone)
(903) 581-1071 (facsimile)

*Of Counsel for Qui Tam Relator Matthew A. Pequignot*

- 11 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 9, 2009, the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A).

/s/ Wesley Hill
Wesley Hill